**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Randall A. Rea
WY Bar No.: 8-6913
Adam E. Lyons
(*pro hac vice* forthcoming)
1620 Central Avenue, Suite #100
Cheyenne, WY 82001
Tel: (307) 369-2880
rrea@bhfs.com
alyons@bhfs.com

**WEINER BRODSKY KIDER PC**
Mitchel H. Kider
(*pro hac vice* forthcoming)
Timothy P. Ofak
(*pro hac vice* forthcoming)
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
kider@thewbkfirm.com
ofak@thewbkfirm.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| ON Q FINANCIAL, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JORNS & ASSOCIATES LLC and JUSTIN WARD JORNS,<br><br>Defendants. | Case No. __________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, On Q Financial, LLC ("On Q"), by and through its undersigned attorneys, brings this Complaint against Defendants, Jorns & Associates LLC ("Jorns & Associates") and Justin Ward Jorns. In support of this Complaint, On Q alleges as follows:

## INTRODUCTION

1. This civil action is for declaratory judgment, rescission, and damages concerning an agreement to provide accounting services dated June 27, 2023, that On Q entered into with Jorns & Associates (the "Consulting Agreement" or "Agreement"). The Agreement is attached as **Exhibit A**.

2. By this Complaint, On Q seeks judicial relief pursuant to 28 U.S.C. § 2201(a) declaring that the Consulting Agreement is unenforceable and voidable as a matter of law because the 18% contingency fee that sections 5 and 6 of the Agreement purport to obligate On Q to pay for preparation of certain tax returns is (1) unenforceable on public policy grounds and (2) substantively and procedurally unconscionable.

3. On Q further seeks rescission of the Consulting Agreement and damages because Jorns & Associates and Mr. Jorns fraudulently induced On Q to enter into the Agreement and made fraudulent, material misrepresentations regarding their accounting services.

## PARTIES

4. Plaintiff, On Q, is a limited liability company that is organized under the laws of the State of Arizona, with its principal place of business located at 14275 N. 87th St., Ste. 210, Scottsdale, AZ 85260.

5. Defendant Jorns & Associates is a limited liability company that is organized under the laws of the State of Wyoming, with its principal place of business located at 301 N. Saint Francis St., Wichita, KS 67202.

6. Jorns & Associates provides accounting services focused on assisting clients with obtaining tax credits.

7. Defendant Justin Jorns is a natural person, who on information and belief, is a citizen of the State of Oklahoma. Limited liability company filings with the Kansas Secretary of State for the year 2025 list an Oklahoma address for Mr. Jorns' place of residence.

8. Mr. Jorns is the CEO of Jorns & Associates and, according to the West Virginia Board of Accountancy's and National Association of State Boards of Accountancy's public records, holds — and at all relevant times, has held — a CPA license issued by the West Virginia Board of Accountancy.

9. As the holder of a West Virginia CPA license, Mr. Jorns is subject to all West Virginia laws governing CPAs and the American Institute of CPAs ("AICPA") Code of Professional Conduct.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because this action arises between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Plaintiff, On Q, is a citizen of the State of Texas because its natural person member is a resident of — and its corporation member is incorporated in and maintains its principal place of business in — the State of Texas.

12. Defendant Jorns & Associates is a citizen of the State of Oklahoma because, on information and belief, its member is a citizen of the State of Oklahoma.

13. Defendant Justin Jorns, on information and belief, is a citizen of the State of Oklahoma.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs, because the contingency fee payment at issue is $499,976.38.

15. This Court has personal jurisdiction over Defendant Jorns & Associates because, pursuant to section 7 of the Consulting Agreement, Jorns and Associates and On Q agreed to bring any legal action arising out of, or relating to, the Consulting Agreement "in the United States District Court for the District of Wyoming or Sheridan County 4th Judicial Circuit Court."

16. This Court has personal jurisdiction over Defendant Justin Jorns because Mr. Jorns has purposefully directed his activities at Wyoming (the forum state) through his operation of a company organized under Wyoming law (Jorns & Associates) and through signing agreements on behalf of that company requiring any legal action to be brought in a Wyoming court (to wit, the Consulting Agreement), On Q's injuries arise out of its interactions with Jorns & Associates (which specifically include entering into the

Consulting Agreement), and this Court's exercise of jurisdiction is therefore reasonable and comports with traditional notions of fair play and substantial justice.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendants for the reasons stated in paragraphs 15 and 16.

## FACTUAL BACKGROUND

18. Mr. Jorns co-founded Jorns & Associates in 2021 to provide accounting services focused on assisting clients with obtaining tax credits — including the Employee Retention Tax Credit ("ERTC"), also known as the Employee Retention Credit ("ERC") — which the federal government issued to certain eligible employers to combat negative economic effects resulting from the COVID-19 pandemic.

19. On or about June 27, 2023, Timothy Garrett, On Q's Vice President of Finance at the time, executed the Consulting Agreement on behalf of On Q.

20. Mr. Jorns, as Jorns and Associates' CEO and a licensed CPA, executed the Consulting Agreement on behalf of Jorns & Associates.

21. Pursuant to the Consulting Agreement — which is governed by Wyoming law (including Wyoming laws regulating CPAs) as stated in section 7 — Jorns & Associates agreed to provide accounting services (including the preparation of Form 941-X amended quarterly returns) in connection with On Q's filing for ERTCs.

22. Pursuant to section 5 of the Consulting Agreement, On Q agreed to pay Jorns & Associates a contingency fee corresponding to 18% of the amount that On Q would receive in ERTCs in exchange for the specified accounting services provided by Jorns & Associates.

23. In offering to provide accounting services, Jorns & Associates falsely and misleadingly held itself out as a licensed CPA firm by, among others, the following representations made on or about June 27, 2023 (and likely at various earlier points):

a. The Agreement provided a link to the website "jorns**cpa**.com" at the bottom of page 1. (Emphases added).

b. Section 5(b) of the Agreement provided a "**Payment Link**" to "**https://www.jorns*cpa*.com/pay/ertc**." (Italics and underlining added).

c. The Dropbox Sign history on the page appended to the Agreement shows that the Agreement was sent to On Q from an individual using the email address "mike@jorns**cpa**." (Emphases added).

d. Mr. Jorns, as a licensed CPA, signed the Agreement on behalf of Jorns & Associates.

24. Jorns & Associates was not a licensed CPA firm at any material time, and Jorns & Associates and Mr. Jorns knew that the representations described in paragraph 23 were therefore false and misleading. Jorns & Associates and Mr. Jorns nonetheless

made these representations with the intent of inducing On Q to enter into the Consulting Agreement and receiving an 18% contingency fee from On Q.

25. In agreeing to the terms of the Consulting Agreement, On Q reasonably relied on the representations described in paragraph 23.

26. In agreeing to the terms of the Consulting Agreement, On Q reasonably relied on false and misleading representations made by Jorns & Associates — as an experienced accounting firm operated by Mr. Jorns — that Jorns & Associates and any person working with Jorns & Associates would provide accounting services in compliance with all applicable laws and the AICPA Code of Professional Conduct.

27. Jorns & Associates and Mr. Jorns knew that the representations described in paragraph 26 were false and misleading because Mr. Jorns is to receive, as CEO and member of Jorns & Associates, proceeds from a legally and ethically prohibited contingency fee in exchange for work performed by him, Jorns & Associates, and possibly other CPA entities owned by him.

28. Jorns & Associates nonetheless made the representations described in paragraph 26 with the intent of inducing On Q to enter into the Consulting Agreement and receiving an 18% contingency fee from On Q.

29. In agreeing to the terms of the Consulting Agreement, On Q reasonably relied on false and misleading representations made by Mr. Jorns — as a licensed CPA who signed the Consulting Agreement on behalf of Jorns & Associates — that he and

Jorns & Associates would provide accounting services in compliance with all applicable laws and the AICPA Code of Professional Conduct.

30. Jorns & Associates and Mr. Jorns knew that the representations described in paragraph 29 were false and misleading because Mr. Jorns is to receive, as CEO and member of Jorns & Associates, proceeds from a legally and ethically prohibited contingency fee in exchange for work performed by him, Jorns & Associates, and possibly other CPA entities owned by him.

31. Mr. Jorns nonetheless made the representations described in paragraph 29 with the intent of inducing On Q to enter into the Consulting Agreement and receiving an 18% contingency fee from On Q.

32. West Virginia Code § 30-9-26(c) provides that no CPA (such as Mr. Jorns) "may for a contingent fee prepare an original or amended tax return or claim for a tax refund."

33. Wyoming Code Rule 061-0001-6(2)(d)(ii) provides that a CPA (such as Mr. Jorns) "shall not prepare an original or amended tax return or claim for a tax refund for a contingent fee for any client."

34. AICPA Code of Professional Conduct Rule 1.510.001(b) provides in relevant part that a CPA (such as Mr. Jorns) "shall not . . . [p]repare an original or amended tax return or claim for a tax refund for a contingent fee for any *client*."

35. Mr. Jorns, Jorns & Associates, and possibly other CPA entities owned by Mr. Jorns prepared On Q's tax returns pursuant to Jorns & Associates' obligations under the Consulting Agreement.

36. In or about September 2025, On Q received $2,792,091 (excluding interest) in ERTCs.

37. In or about February 2026, Jorns & Associates contacted On Q to request payment of $499,976.38 — ($2,792,091 x 0.18) less a $2,600 deposit — for services performed pursuant to the Consulting Agreement.

38. As a result, Jorns & Associates (and Mr. Jorns as CEO) seeks payment of a contingency fee in exchange for work that Mr. Jorns, Jorns & Associates, and possibly other CPA entities owned by Mr. Jorns performed to prepare and file On Q's tax returns even though Mr. Jorns, as a licensed CPA, may not legally or ethically perform such work for a contingency fee.

39. Moreover, Jorns & Associates is holding itself out as a CPA firm that is operating in compliance with applicable laws and professional conduct standards while seeking payment of a contingency fee for the preparation of tax returns, which violates West Virginia and Wyoming state law and the AICPA Code of Professional Conduct.

## COUNT I

**(Declaratory Judgment — Unenforceable Contract on Public Policy Grounds)**

40. On Q realleges and incorporates by reference paragraphs 1 through 39 above as if fully restated herein.

41. An actual, justiciable controversy exists between On Q, on the one hand, and Jorns & Associates and Mr. Jorns, on the other hand, regarding whether On Q is obligated to pay Jorns & Associates a fee and the amount of such fee, pursuant to the Consulting Agreement.

42. Because enforcement of the contractual provisions purporting to obligate On Q to pay a contingency fee for the preparation of tax returns would enable Jorns & Associates and Mr. Jorns to subvert state law and the AICPA Code of Professional Conduct, the Consulting Agreement is unenforceable on public policy grounds.

43. Specifically, enforcement of sections 5 and 6 of the Consulting Agreement (which address payment of the 18% contingency fee) would permit Jorns & Associates and Mr. Jorns (as CEO) to receive a contingency fee for work that Mr. Jorns, Jorns & Associates, and possibly other CPA entities owned by Mr. Jorns even though Mr. Jorns, as a licensed CPA, may not legally or ethically perform such work for a contingency fee.

## COUNT II

**(Declaratory Judgment — Unconscionable Contract)**

44. On Q realleges and incorporates by reference paragraphs 1 through 43 above as if fully restated herein.

45. An actual, justiciable controversy exists between On Q, on the one hand, and Jorns & Associates and Mr. Jorns, on the other hand, regarding whether On Q is obligated to pay Jorns & Associates a fee and the amount of such fee, for services performed pursuant to the Consulting Agreement.

46. The Consulting Agreement is unenforceable and voidable because the requested 18% contingency fee is substantively and procedurally unconscionable.

47. Specifically, sections 5 and 6 of the Consulting Agreement (which address payment of the 18% contingency fee) are substantively unconscionable because it is facially unreasonable — as evidenced by state laws and CPA professional conduct standards prohibiting such contingency fees — to charge a fee of nearly one fifth the amount of a multimillion-dollar refund in exchange for simply preparing and filing standardized tax forms.

48. No prudent accountant who holds himself or herself out as a CPA — or prudent accounting firm that holds itself out as a CPA firm — would charge such an excessive contingency fee to prepare and file tax returns. Nor is a licensed CPA legally or ethically permitted to charge such a contingency fee to prepare and file tax returns.

49. Additionally, sections 5 and 6 of the Consulting Agreement are procedurally unconscionable because — given On Q's reasonable reliance on Jorns & Associates' expertise as an accounting firm and Mr. Jorns' expertise as a licensed CPA — Jorns & Associates (and Mr. Jorns) abused its contractual position by deceptively including in the Consulting Agreement a contingency fee that is legally and ethically prohibited.

## COUNT III

**(Fraudulent Inducement — Wyoming Common Law)**

50. On Q realleges and incorporates by reference paragraphs 1 through 49 above as if fully restated herein.

51. Jorns & Associates falsely held itself out as a licensed CPA firm by making, among others, the representations described in paragraph 23, even though Jorns & Associates claims that it is not subject to the legal requirements applicable to licensed CPA firms and licensed CPAs.

52. Jorns & Associates and Mr. Jorns falsely represented that they would provide accounting services in compliance with all applicable laws and the AICPA Code of Professional Conduct.

53. On Q reasonably relied on these false representations made by Jorns & Associates, as an experienced accounting firm operated by Mr. Jorns.

54. On Q reasonably relied on these false representations made by Mr. Jorns, as a licensed CPA who signed the Consulting Agreement on behalf of Jorns & Associates.

55. Jorns & Associates' and Mr. Jorns' false representations were material to On Q's decisions to hire Jorns & Associates to perform accounting services and to enter into the Consulting Agreement.

56. Jorns & Associates and Mr. Jorns knowingly made these false representations with the intent of inducing On Q to enter into the Consulting Agreement and receiving an 18% contingency fee from On Q.

57. As a result of On Q's reliance on Jorns & Associates' and Mr. Jorns' false representations, On Q suffered damages in an amount to be proven at trial, but in no event less than the $499,976.38 contingency fee payment demanded by Jorns & Associates.

**<u>COUNT IV</u>**

**(Fraudulent Misrepresentation — Wyoming Common Law)**

58. On Q realleges and incorporates by reference paragraphs 1 through 57 above as if fully restated herein.

59. Jorns & Associates and Mr. Jorns falsely represented that they would provide accounting services in compliance with all applicable laws and the AICPA Code of Professional Conduct because Mr. Jorns is to receive, as CEO and member of Jorns & Associates, proceeds from a legally and ethically prohibited contingency fee in exchange

for work performed by him, Jorns & Associates, and possibly other CPA entities owned by him.

60. Jorns & Associates' and Mr. Jorns' false representations were material to On Q's decisions to hire Jorns & Associates to perform accounting services and to enter into the Consulting Agreement.

61. On Q reasonably relied on these false representations made by Jorns & Associates, as an experienced accounting firm operated by Mr. Jorns.

62. On Q reasonably relied on these false representations made by Mr. Jorns, as a licensed CPA who signed the Consulting Agreement on behalf of Jorns & Associates.

63. Jorns & Associates and Mr. Jorns knowingly made these false representations with the intent of receiving the legally and ethically prohibited 18% contingency fee from On Q.

64. As a result of On Q's reliance on Jorns & Associates' and Mr. Jorns' false representations, On Q suffered damages in an amount to be proven at trial, but in no event less than the $499,976.38 contingency fee payment demanded by Jorns & Associates.

## PRAYER FOR RELIEF

WHEREFORE, On Q respectfully requests that the Court enter judgment as follows:

**Count I:**

Pursuant to 28 U.S.C. § 2201(a), On Q requests a judgment in its favor and against Jorns & Associates and Mr. Jorns:

a. Declaring that On Q is not legally obligated to pay Jorns & Associates or Mr. Jorns any fee amount pursuant to the Consulting Agreement;

b. Declaring that the Consulting Agreement is unenforceable and voidable as a matter of law;

c. Awarding On Q its costs of suit; and

d. Awarding On Q such other and further relief as the Court deems appropriate, just, and equitable.

**Count II:**

Pursuant to 28 U.S.C. § 2201(a), On Q requests a judgment in its favor and against Jorns & Associates and Mr. Jorns:

a. Declaring that On Q is not legally obligated to pay Jorns & Associates or Mr. Jorns any fee amount pursuant to the Consulting Agreement;

b. Declaring that the Consulting Agreement is unenforceable and voidable as a matter of law;

c. Awarding On Q its costs of suit; and

d. Awarding On Q such other and further relief as the Court deems appropriate, just, and equitable.

**Count III:**

On Q requests a judgment in its favor and against Jorns & Associates and Mr. Jorns:

a. Rescinding the Consulting Agreement;

b. Awarding compensatory and punitive damages in amounts to be proven at trial;

c. Awarding On Q its attorneys' fees; and

d. Any other and further relief as the Court deems appropriate, just, and equitable.

**Count IV:**

On Q requests a judgment in its favor and against Jorns & Associates and Mr. Jorns:

e. Rescinding the Consulting Agreement;

f. Awarding compensatory and punitive damages in amounts to be proven at trial;

g. Awarding On Q its attorneys' fees; and

h. Any other and further relief as the Court deems appropriate, just, and equitable.

Dated: September 28, 2026.

Respectfully submitted,

*/s/ Randall A. Rea*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Randall A. Rea
WY Bar No.: 8-6913
Adam E. Lyons
(*pro hac vice* forthcoming)
1620 Central Avenue, Suite #100
Cheyenne, WY 82001
Tel: (307) 369-2880
rrea@bhfs.com
alyons@bhfs.com

WEINER BRODSKY KIDER PC
Mitchel H. Kider (*pro hac vice* forthcoming)
Timothy P. Ofak (*pro hac vice* forthcoming)
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
kider@thewbkfirm.com
ofak@thewbkfirm.com

*Attorneys for Plaintiff, On Q Financial, LLC*